# United States Court of Appeals
## For the First Circuit

---

No. 04-1718

LEONARD FAFEL,

Plaintiff, Appellant,

v.

JAMES V. DIPAOLA, individually

and in his capacity as Middlesex Sheriff,

Defendant, Appellee.

---

APPEAL FROM THE U.S. DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

---

Before

Torruella, Circuit Judge,
Campbell, Senior Circuit Judge,
and Lipez, Circuit Judge.

---

Robert S. Mantell, with whom Rodgers, Powers & Schwartz LLP
was on brief, for appellant.
Thomas Drechsler, Special Assistant Attorney General, with
whom Salvatore M. Giorlandino, Assistant Attorney General, and
Finneran, Byrne & Drechsler, L.L.P., were on brief, for appellee.

---

March 7, 2005

---

**LIPEZ, Circuit Judge**.  Plaintiff-Appellant Leonard Fafel appeals from the denial of his Rule 60(b)(4) motion for relief from an injunction that prohibits him from pursuing claims in state court in contravention of a consent judgment entered in federal court pursuant to Rule 68.  See Fed. R. Civ. P. 60 (Relief from Judgment or Order); Fed. R. Civ. P. 68 (Offer of Judgment).  Fafel argues that the injunction is void for lack of subject-matter jurisdiction because the district court misunderstood the scope of its ancillary jurisdiction to enforce the underlying Rule 68 judgment.  Given that the district court had more than an arguable basis for concluding that it had jurisdiction to enforce its judgment, we reject Fafel's collateral attack and affirm the district court's decision.

## I.

### A.        Fafel's State and Federal Court Actions

We recount the undisputed facts and procedural history in some detail to provide an understanding of the unusual nature of this case.  On April 10, 2002, Fafel filed a civil rights action under 42 U.S.C. § 1983, along with pendent state law claims, in federal district court against Defendant-Appellee, Middlesex County Sheriff James V. DiPaola, individually and in his official capacity, based on Fafel's termination from employment in April 2000.  Specifically, Fafel alleged that DiPaola had caused a deprivation of Fafel's constitutional rights to freedom of

-2-

association and due process in violation of § 1983 and its state law counterpart, Mass. Gen. L. ch. 12, § 11I, and that he had engaged in tortious interference with Fafel's employment. Fafel had already filed another action against DiPaola and the Commonwealth of Massachusetts arising out of the same incident in Massachusetts Superior Court alleging that Fafel had been terminated without the benefit of procedural protections required under Mass. Gen. L. ch. 35, § 51. On May 30, 2002, less than two months after the filing of his federal court action, Fafel obtained a court order in his state court action directing DiPaola and the Commonwealth of Massachusetts to reinstate Fafel with back pay. Judgment in Fafel's favor was not entered until approximately six months later, in January 2003.

**B.      DiPaola's Offer of Judgment**

On April 17, 2003, while DiPaola's appeal from the state court judgment was pending in the Massachusetts Appeals Court, Fafel filed a civil contempt action against DiPaola in state court seeking enforcement of the state court judgment. On April 30, 2003, DiPaola filed a motion for summary judgment in Fafel's federal court action. Instead of waiting for a ruling on the motion, DiPaola extended an offer of judgment to Fafel on May 8, 2003, pursuant to Federal Rule of Civil Procedure 68, which permits "a party defending against a claim [to] serve upon the adverse party an offer to allow judgment to be taken against the defending

-3-

party for the money or property or to the effect specified in the offer, with costs then accrued."  DiPaola's offer specified an amount of $150,000, including "attorney['s] fees and costs accrued to date in the [federal court] case only," which amount, "[i]f accepted, . . . shall satisfy all claims made and relief sought by the plaintiff against the defendant arising from or related to the April 2000 termination of the plaintiff from his employment in the Middlesex Sheriff's Department."  The offer also provided that, upon Fafel's acceptance, "judgment shall enter in the amount of $150,000 . . . in the case of <u>Leonard Fafel v. James V. DiPaola, Individually, and in his capacity as Middlesex Sheriff</u>[,] and . . . plaintiff's claims for punitive damages and injunctive relief shall be dismissed with prejudice."  The offer of judgment did not explicitly refer to the disposition of Fafel's state law claims.

Under Rule 68, "[i]f within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall enter judgment."  Fafel timely accepted the offer, and DiPaola filed the requisite documents with the court on May 13, 2003.  For reasons that remain unclear, judgment was not immediately entered.  Instead, on May 15, 2003, the entire case was dismissed "[i]n accordance with the Offer of Judgement filed by the Defendant on May 13, 2003."

-4-

**C.      DiPaola's Motion to Enforce**

When Fafel refused to sign a stipulation of dismissal in his state court contempt action or to assent to a motion to vacate the state court judgment of reinstatement and back pay based on Fafel's April 2000 termination, DiPaola moved in federal district court on June 11, 2003, to enforce the Rule 68 judgment through an injunction prohibiting Fafel from pursuing his state court action. That same day, judgment was entered in the federal court action in Fafel's favor.  Because the order of dismissal entered on May 15, 2003, clearly failed to comply with either the terms of Rule 68 or the terms of the offer of judgment filed with the court,[1] we treat that order as superseded by the judgment that was properly entered on June 11, 2003, "[i]n accordance with Plaintiff's acceptance of the Defendant's Offer of Judgement," which in turn provided that "judgment shall enter in the amount of $150,000 . . . in the case of Leonard Fafel v. James V. DiPaola Individually, and in his capacity as Middlesex Sheriff[,] and . . . plaintiff's claims for punitive damages and injunctive relief shall be dismissed with prejudice."

---

[1]Put most simply, an order dismissing a lawsuit does not result in the entry of the judgment for money damages contemplated by the Rule 68 offer in this case.  The language of the order also created an ambiguity about whether Fafel's claims for punitive damages and injunctive relief were dismissed with prejudice.  The Rule 68 offer clearly required dismissal with prejudice.

-5-

On August 19, 2003, the district court held a hearing on DiPaola's motion to enforce.[2] DiPaola argued that Fafel was precluded from pursuing reinstatement through his state court contempt action because, under the terms of the Rule 68 offer of judgment that Fafel had accepted, his identical prayer for injunctive relief in the form of reinstatement in the federal court action had been dismissed with prejudice. Similarly, DiPaola argued, Fafel was precluded from pursuing back pay in state court through his contempt action because, again under the terms of the Rule 68 offer, Fafel's acceptance of payment of $150,000 "satisf[ied] all claims made and relief sought by the plaintiff against the defendant arising from or related to [his] April 2000 termination."[3]

Observing that Fafel had "lost" any entitlement to back pay (the amount of which had never been calculated) in state court by accepting DiPaola's offer of a $150,000 federal court judgment in satisfaction of "all claims made and relief sought . . . arising from or related to [his] April 2000 termination," the district court enjoined Fafel -- deliberately "parrot[ing]" the terms of the offer of judgment he had accepted -- "from taking any action to

---

[2]The state court stayed Fafel's contempt action pending the district court's decision on DiPaola's motion to enforce the Rule 68 judgment.

[3]DiPaola tendered a check to Fafel dated August 15, 2003, which was deposited on August 19, 2003.

seek relief or make claims against defendant arising from or related to the April 2000 termination of the plaintiff from his employment in the Middlesex Sheriff's Department."[4]  When Fafel objected on the ground that the court lacked subject-matter jurisdiction over his action in state court, the district court responded, "I have jurisdiction over my judgment[,] and I'm enforcing this judgment with respect to all claims made and relief sought by the plaintiff against the defendant arising from or related to the April[] 2000 termination of the plaintiff."

## D.        Fafel's Motion for Relief

Fafel did not appeal from the issuance of the injunction. On October 30, 2003, approximately one month after the 30-day time limit for filing a notice of appeal had passed, Fafel, represented by new counsel, filed a "Motion to Vacate the Judgment and Reopen the Case Due to an Unauthorized Acceptance of an Offer of Judgment."  He claimed that his former attorney had acted "contrary to [Fafel's] specific instruction that [his attorney] not accept an offer of judgment to the extent that it would dispose of [Fafel's] claims in Massachusetts Court."  In his motion, Fafel estimated that "he would be owed $457,000" in back pay "as of June 30, 2003," under the state court's judgment and stated that "[i]t simply would

---

[4]The district court expressed some reservations about whether Fafel's contempt action seeking to enforce the state court order of reinstatement fell within the scope of the terms of the offer. Without deciding the matter, it simply issued an injunction in accordance with the terms of the accepted offer.

not have made sense to accept a $150,000 offer of judgment in Federal Court, to the extent that it would have [led] to a waiver of the lucrative judgment in State Court worth $457,000 plus reinstatement."  Fafel then alleged that his former attorney had been "instructed not to accept the offer to the extent that it called for a release of the state law claims."  In his prayer for relief, Fafel requested that the court "[w]ithdraw the injunction that prevents Plaintiff from pursuing remedies in State Court for the April 2000 termination."

The magistrate judge considering this motion held an evidentiary hearing on February 24, 2004, and issued a report and recommendation on April 14, 2004.  The magistrate judge construed the motion as one for relief from judgment under the catch-all provision of Federal Rule of Civil Procedure 60(b)(6), which permits a district court to grant relief for "any other reason [not set forth in Rule 60(b)(1)-(5)] justifying relief from the operation of the judgment."

The magistrate judge first addressed Fafel's failure to appeal the issuance of the injunction. Reciting the "bedrock" rule that "Rule 60(b)(6) cannot, and should not, be used to [circumvent] time limits available to take an appeal," the magistrate judge stated: "To the extent that plaintiff was of the view that the district judge . . . improperly or improvidently granted the defendant the injunctive relief sought, he could have filed an

appeal . . . within thirty (30) days after the injunctive relief was ordered."  The magistrate judge concluded, quoting Cotto v. United States, 993 F.2d 274, 278 (1st Cir. 1993), that "[P]laintiff's current Motion to Reopen . . . is nothing more than an attempt to '. . . escape the consequences of failure to take a timely appeal.'"

Nevertheless, the magistrate judge went on to address Fafel's motion on the merits.  Based on the evidence presented during the hearing, he determined that Fafel "_did_ give [his attorney] _actual_ authority to accept the offer of judgment, knowing full well that . . . there was a downside risk in acceptance of the offer."  Accordingly, the magistrate judge recommended denial of Fafel's motion to vacate the Rule 68 judgment on the merits.

Then, after noting that "[n]either side . . . ha[d] addressed [Fafel's] prayer for relief" requesting withdrawal of the injunction enforcing the Rule 68 judgment (as distinct from Fafel's request for relief from the Rule 68 judgment itself), the magistrate judge recommended _sua_ _sponte_ that the district court vacate the injunction because "this court always must be vigilant" about subject-matter jurisdiction.[5]  The magistrate judge explained that DiPaola's motion to enforce the Rule 68 judgment must be "[t]reated as a breach of contract suit" between non-diverse

_____

[5]The magistrate judge did not identify which provision of Rule 60(b) authorized the granting of such relief and under what conditions.  We address this question below in Part II.

-9-

parties governed solely by state law, over which the district court lacked jurisdiction once the court had disposed of Fafel's § 1983 suit. The magistrate judge then quoted extensively from the Supreme Court's opinion in <u>Kokkonen</u> v. <u>Guardian Life Insurance Co. of America</u>, 511 U.S. 375 (1994). There, the Court held that a federal district court lacked subject-matter jurisdiction to enforce a settlement agreement for which part of the consideration was the filing of a stipulation of voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(ii).[6] The Court held that the settlement agreement at issue in <u>Kokkonen</u>, which provided no independent basis for federal jurisdiction, could only be enforced in federal court pursuant to the court's ancillary jurisdiction if the dismissal order either (1) incorporated the terms of the settlement agreement or (2) contained a provision, with the parties' consent, expressly reserving jurisdiction to enforce the agreement. <u>Id.</u> at 381-82.

In the instant case, the magistrate judge reasoned, the district court had employed neither of the measures set forth in <u>Kokkonen</u>. Instead, "[t]he Order of Dismissal previously entered [on May 15, 2003], and the formal judgment later entered [on June 11, 2003], did not purport to condition the dismissal on compliance

_____

[6]Fed. R. Civ. P. 41(a)(1)(ii) provides for dismissal of a plaintiff's claims "without order of court" upon the filing of "a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the . . . stipulation" (and with exceptions not relevant here), "the dismissal is without prejudice . . . ."

with the terms of the offer of judgment.  Nor did [they] purport to retain jurisdiction over the case to enforce the settlement."[7]  As a result, the magistrate judge concluded, the district court lacked subject-matter jurisdiction to enforce the terms of the Rule 68 offer purporting to "satisfy all claims made and relief sought by the plaintiff against the defendant arising from or related to [his] April 2000 termination."

DiPaola filed a limited objection to the magistrate judge's report and recommendation relating to subject-matter jurisdiction.  The district court then issued the following margin order on April 30, 2004:

> I adopt the Report and Recommendation except with respect to the recommendation that I lack subject matter jurisdiction to enforce the offer of judgment by an injunction.  I believe I have jurisdiction to issue the injunction. See Utility Automation 2000 Inc. v. Choctawhatchee Electric Cooperative, 298 F.3d 1238, 1248-49 (11th Cir. 2002).

The district court denied Fafel's motion for reconsideration of its jurisdictional ruling on May 24, 2004.  Fafel now appeals only from that portion of the court's decision rejecting the magistrate

---

[7]As we noted above, the May 15, 2003, order of dismissal, which on its face failed to comport with the terms of the offer of judgment or with Rule 68, was incorrectly entered.  As we discuss in Part III. C, a Rule 68 judgment differs from an order dismissing a lawsuit.  The magistrate judge did not recognize that the judgment entered on June 11, 2003, superseded the order of dismissal.  This misunderstanding contributed significantly to the misapplication of the Kokkonen case.

judge's recommendation to vacate the injunction for lack of subject-matter jurisdiction.

## II.

**A.     Standard of Review**

We treat Fafel's appeal, which continues a collateral attack on the validity of an injunction allegedly issued in the absence of subject-matter jurisdiction, as an appeal from a denial of a motion for relief from a judgment pursuant to Federal Rule of Civil Procedure 60(b)(4), which permits a court to grant such relief where "the judgment is void." See Lubben v. Selective Serv. Sys. Local Bd. No. 27, 453 F.2d 645, 649-50 (1st Cir. 1972) (analyzing claim that judgment was entered without subject-matter jurisdiction under Rule 60(b)(4)).[8] Ordinarily, a district court's decision to grant or deny relief from judgment pursuant to Rule 60(b) is reviewable on appeal "only for an abuse of discretion." Honneus v. Donovan, 691 F.2d 1, 2 (1st Cir. 1982) (per curiam) (citation omitted). We have said, however, that a court deciding a motion brought under Rule 60(b)(4) "ha[s] no discretion because a judgment is either void or it is not." Id. (citations omitted). Thus, we review de novo the district court's legal conclusion that

---

[8]We thus have no need to analyze Fafel's claim under the "catch-all" provision of Rule 60(b)(6), which the magistrate judge used to analyze Fafel's entirely different claim that his attorney lacked authority to accept the Rule 68 offer.

it had subject-matter jurisdiction to enforce its judgment with the issuance of the injunction.

**B.      Void Judgments**

As the magistrate judge noted, courts must always be "vigilant" about the existence of subject-matter jurisdiction. Yet determining when a judgment rendered in the absence of subject-matter jurisdiction is "void" for purposes of collateral attack is an issue of some complexity.

"Federal courts are courts of limited jurisdiction," Kokkonen, 511 U.S. at 377, and the requirement of subject-matter jurisdiction "functions as a restriction on federal power," Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982). The existence of subject-matter jurisdiction "is never presumed." Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). Rather, federal courts, including appellate courts, must satisfy themselves that subject-matter jurisdiction has been established. Ins. Corp. of Ir., 456 U.S. at 702. To that end, federal courts have jurisdiction for at least the limited purpose of determining whether they have jurisdiction. Chicot Cty. Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 377 (1940).

A court without subject-matter jurisdiction may not acquire it by consent of the parties; "principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings." Ins. Corp. of

-13-

Ir., 456 U.S. at 702 (citations omitted). Weighing against this seemingly "inflexible" jurisdictional requirement, id. (internal quotation marks and citation omitted), however, is a strong interest in the finality of judgments. "The court has the authority to pass upon its own jurisdiction and its decree sustaining jurisdiction against attack, while open to direct review, is res judicata in a collateral action." Chicot Cty. Drainage Dist., 308 U.S. at 377.

Where a judgment is collaterally attacked as void for lack of subject-matter jurisdiction, then, "[c]ompeting policies are at stake," namely, "observation of limits on federal jurisdiction and need for judgments that are final." Kan. City S. Ry. v. Great Lakes Carbon Corp., 624 F.2d 822, 826 (8th Cir. 1980) (en banc); see also Hodge v. Hodge, 621 F.2d 590, 592 (3d Cir. 1980) ("[U]nless more than the private interests of the litigants is at stake, even the issue of subject matter jurisdiction must at some point be laid to rest."); Lubben, 453 F.2d at 650 (noting a need for "the certainty which allows controversies to be deemed judicially concluded"). Accordingly, this court has established a high bar for collaterally vacating a judgment for lack of subject-matter jurisdiction:

> A void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack. A void judgment is one which, from its inception, was a complete nullity and without legal effect. In the interest of finality, the concept of void

-14-

> judgments is narrowly construed. While absence of subject matter jurisdiction may make a judgment void, such total want of jurisdiction must be distinguished from an error in the exercise of jurisdiction. A court has the power to determine its own jurisdiction, and an error in that determination will not render the judgment void. Only in the rare instance of a clear usurpation of power will a judgment be rendered void.

Lubben, 453 F.2d at 649 (footnotes omitted). If a court has an "arguable basis" for concluding that it has subject-matter jurisdiction, the judgment it enters may not be collaterally attacked as "void." Nemaizer v. Baker, 793 F.2d 58, 65 (2d Cir. 1986).

Fafel's collateral attack on the district court's judgment alleging a lack of subject-matter jurisdiction must be evaluated pursuant to these principles. In this case, neither the magistrate judge nor the district court discussed the difference between a challenge to a court's subject-matter jurisdiction on direct appeal and a collateral attack on that jurisdiction. The magistrate judge observed that Fafel's argument that his attorney lacked authority to accept DiPaola's offer of judgment was "nothing more than an attempt" to cure his failure to appeal the injunction within the time limits set forth in Fed. R. App. P. 4(a). That observation is equally applicable to Fafel's claim that the injunction is void for lack of subject-matter jurisdiction, a claim which Fafel raises for the first time on appeal from the district

-15-

court's rejection of the magistrate judge's sua sponte recommendation on subject-matter jurisdiction. See Lubben, 453 F.2d at 651 (Rule 60(b)(6), "like Rule 60(b) generally, is not a substitute for an appeal"). Nevertheless, a motion for relief from an unappealed judgment alleged to be void for lack of subject-matter jurisdiction may succeed if the rigorous standard for such relief is met. Kocher v. Dow Chem. Co., 132 F.3d 1225, 1230 (8th Cir. 1997) (reviewing Rule 60(b)(4) motion "employ[ed] . . . as a substitute for the timely appeal [plaintiff] never filed"). We turn, then, to the question of whether the district court, by enjoining Fafel from pursuing claims in state court in order to enforce a federal court judgment, engaged in "a clear usurpation of power" such that the injunction, "from its inception, was a complete nullity and without legal effect," Lubben, 453 F.2d at 649.

## III.

### A.        Ancillary Enforcement Jurisdiction

"The doctrine of enforcement jurisdiction is a judicial creation, born of the necessity that courts have the power to enforce their judgments." U.S.I. Props. Corp. v. M.D. Constr. Co., 230 F.3d 489, 496 (1st Cir. 2000). Without this "residual federal jurisdiction . . . flowing from [a court's] original jurisdiction over the action," id. at 496, "the judicial power would be incomplete and entirely inadequate to the purposes for which it was

conferred by the Constitution," Riggs v. Johnson Cty., 73 U.S. (6 Wall.) 166, 187 (1867). However, because enforcement jurisdiction is a "creature of necessity," it extends only as far as required to effectuate a judgment. Peacock v. Thomas, 516 U.S. 349, 359 (1996).

Fafel contends that the district court impermissibly extended its ancillary jurisdiction to enforce a judgment by interpreting and enforcing the terms of the underlying Rule 68 offer and acceptance of judgment, which, he argues, constituted nothing more than a private settlement agreement between non-diverse parties governed solely by state contract law. Under Kokkonen, Fafel maintains, the court's failure to incorporate the terms of the offer of judgment into the formal judgment or to include an express provision retaining jurisdiction deprived it of authority to enforce the provision in the Rule 68 offer purporting to "satisfy all claims made and relief sought by the plaintiff against the defendant arising from or related to [Fafel's] April 2000 termination."

B.      The Kokkonen Decision

In Kokkonen, the Supreme Court unanimously held that a district court lacked jurisdiction to enforce the terms of a settlement agreement after the underlying federal court action had been dismissed with prejudice by stipulation of the parties under Rule 41(a)(1)(ii). 511 U.S. at 382. Although the substance of the

-17-

oral settlement agreement was "recited, on the record, before the District Judge in chambers," id. at 376, the terms later sought to be enforced, which provided for the return of files to one party, "ha[d] nothing to do with" the subject-matter of the claim that had originally initiated the litigation in federal court, id. at 380.[9] Rather, the stipulation of voluntary "dismissal of an earlier federal suit" was but "part of the consideration for" the settlement agreement.  Id. at 381.  The subsequent action to enforce the unrelated terms of the settlement agreement thus constituted a standard breach of contract suit "requir[ing] its own basis for jurisdiction."  Id. at 378.

Under certain circumstances, the Court recognized that an independent basis for federal jurisdiction may be supplied by ancillary jurisdiction.  The doctrine of ancillary jurisdiction, the Court explained, serves

> two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.

Kokkonen, 511 U.S. at 379-80 (citations omitted).[10]

---

[9]The underlying action involved breach of an agency contract and had been removed to federal court based on diversity jurisdiction.  Kokkonen, 511 U.S. at 376.

[10]The first type of ancillary jurisdiction has been described as "supplemental" jurisdiction, and is generally codified at 28

The facts in Kokkonen supported neither rationale. Rather, the Court stressed that "[t]he facts to be determined with regard to" the claim of breach of the settlement agreement providing for the return of files were "quite separate from the facts to be determined in the principal suit," which involved an alleged breach of an entirely different agreement. Id. at 381. In the context of that case, "it would neither be necessary nor even particularly efficient that [the two claims] be adjudicated together." Id. at 380. Moreover, "the only order [in Kokkonen] was that the suit be dismissed, a disposition that is in no way flouted or imperiled by the alleged breach of the settlement agreement" providing for the return of files. Id. The Court also emphasized that the action to enforce the terms of the settlement

U.S.C. § 1367. See 28 U.S.C. § 1367(a) ("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); Vera-Lozano v. Int'l Broad., 50 F.3d 67, 70 (1st Cir. 1995) (§ 1367(a) codifies "common nucleus of operative fact" test adopted in United Mine Workers v. Gibbs, 383 U.S. 715 (1966)).

The second type of ancillary jurisdiction has been characterized as "enforcement jurisdiction" and recognizes the "inherent power of federal courts to exercise jurisdiction in order to enforce their judgments in certain situations where jurisdiction would otherwise be lacking." Futura Dev. of P.R. v. Estadio Libre Asociado de P.R., 144 F.3d 7, 9 n.1 (1st Cir. 1998) (distinguishing between "supplemental" jurisdiction and "enforcement" jurisdiction); see also Susan M. Glenn, Note, Federal Supplemental Enforcement Jurisdiction, 42 S.C. L. Rev. 469 (1991).

agreement involved "more than just a continuation or renewal of the dismissed suit." Id. at 378. Finally, the Court stated:

> The situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal -- either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.

Id. at 381.[11] In the absence of an independent basis for federal jurisdiction or one of the additional measures required to retain ancillary jurisdiction, the Court concluded, "enforcement of the settlement agreement is for state courts." Id. at 382.

---

[11]If the May 15, 2003, order of dismissal had remained the operative document in this case (rather than the judgment that we have explained superseded the order of dismissal), an argument could be made that the order, which was entered "[i]n accordance with the Offer of Judgement filed by the Defendant," complied with the requirement that it "incorporat[e] the terms of the settlement agreement." Kokkonen, 511 U.S. at 381. There is some disagreement among the circuits about what language is required to effectively incorporate such terms for purposes of retaining jurisdiction. See, e.g., In re Phar-Mor, Inc. Sec. Litig., 172 F.3d 270, 274-75 (3d Cir. 1999) (citing cases finding similar language in orders of dismissal insufficient to incorporate terms of settlement agreements); but see Lucille v. City of Chicago, 31 F.3d 546, 549 (7th Cir. 1994) (Cudahy, J., concurring) ("It is not much of a stretch to construe 'entered in accordance with' as language of incorporation" where "Kokkonen is silent as to what words a district court must use"). We need not resolve the matter because the Rule 68 offer of judgment in this case properly resulted in the entry of a judgment rather than an order of dismissal.

**C.** **Applying <u>Kokkonen</u>**

Fafel argues that the Rule 68 judgment in this case was obtained merely as an incident to a purely private settlement agreement between non-diverse parties: "In this case, the parties settled the case via an offer of judgment." As a result, he argues, like the order of dismissal entered in <u>Kokkonen</u>, entry of the Rule 68 judgment was simply part of the consideration for a private contract comprising the terms of the offer.

To be sure, "[t]he plain purpose of Rule 68 is to encourage settlement and avoid litigation." <u>Marek</u> v. <u>Chesny</u>, 473 U.S. 1, 5 (1985). To that end, Rule 68 creates a significant disincentive for a party to reject an offer of judgment in favor of proceeding to trial by imposing the risk of being charged with "costs incurred after the making of the offer" if "the judgment finally obtained by the offeree is not more favorable than the offer." Fed. R. Civ. P. 68. However, entry of judgment pursuant to Rule 68 operates as more than mere consideration for the underlying offer and acceptance of judgment. The unique features of Rule 68 render "[a] Rule 68 judgment . . . a consent judgment of a particular kind." <u>Mallory</u> v. <u>Eyrich</u>, 922 F.2d 1273, 1280 (6th Cir. 1991).

In order to trigger entry of judgment under Rule 68, one party must first "file the offer and notice of acceptance together with proof of service thereof." Fed. R. Civ. P. 68. Upon filing,

-21-

the clerk of court "shall enter judgment."  Id.; see Ramming v.

Natural Gas Pipeline Co., 390 F.3d 366, 370 (5th Cir. 2004) ("A

Rule 68 Offer of Judgment is usually considered self-executing.").

In the event that an offeree rejects an offer of judgment made in

compliance with Rule 68, the court may be called upon to enforce

the rule's cost-shifting provision, thus imbuing the decision to

reject a fair offer of judgment with meaningful consequences. See,

e.g., Webb v. James, 147 F.3d 617, 621 (7th Cir. 1998) ("Unlike an

ordinary contract offer, 'a Rule 68 offer imposes certain

consequences that can be costly for the plaintiff who declines the

offer.'") (citation omitted).  In order to enforce the cost-

shifting provision, moreover, a court necessarily must evaluate the

terms of the rejected offer in order to compare it against the

value of any "judgment finally obtained by the offeree" and thereby

determine whether the offeree is liable for "costs incurred after

making of the offer."  Fed. R. Civ. P. 68.[12]  See, e.g., Tai Van Le

v. Univ. of Pa., 321 F.3d 403, 407-09 (3d Cir. 2003) (district

court properly compared final judgment obtained by plaintiff

against offer tendered by defendants).

If an offer of judgment is accepted and judgment entered,

a court may still be called upon (as was the district court in this

case) to decide a motion brought under Fed. R. Civ. P. 60(b) to

---

[12]A rejected offer is "deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs."  Fed. R. Civ. P. 68.

vacate the Rule 68 judgment.  See, e.g., Webb, 147 F.3d at 622 ("[T]he proper procedural device for relief from a Rule 68 judgment is the same as for any other judgment: Rule 60.") (citing Richardson v. Nat'l R.R. Passenger Corp., 49 F.3d 760, 765 (D.C. Cir. 1995)).  Again, in doing so, a court may have to interpret the terms of the underlying offer of judgment in order to determine whether relief from judgment is warranted.

Finally, when a district court is called upon to enforce a Rule 68 judgment, it may examine the parties' intent regarding the effect of that judgment, as manifested by the offer and acceptance of judgment filed with the court.  In the absence of terms specifying the "money or property" or other "effect" to which "judgment [is] to be taken against the defending party," Fed. R. Civ. P. 68, a Rule 68 judgment has no meaningful content; the terms of an accepted offer of judgment are thus part and parcel of a Rule 68 judgment.  As a result, a Rule 68 judgment necessarily incorporates the terms of the underlying offer, with or without the additional measures prescribed in Kokkonen for a settlement agreement providing for dismissal of claims under Rule 41.[13]

_____

[13]In its margin order rejecting the magistrate judge's recommendation that it vacate the injunction for lack of subject-matter jurisdiction pursuant to Kokkonen, the district court cited the Eleventh Circuit's opinion in Utility Automation, 298 F.3d at 1248-49.  That portion of Utility Automation describes the effect of a Rule 68 judgment for purposes of determining an offeree's entitlement to attorney's fees as a "prevailing party." Id. We do not view Utility Automation as bearing on the entirely different question of whether the district court had subject-matter

Here, in evaluating DiPaola's motion to enforce the Rule 68 judgment by enjoining Fafel's pursuit of his claims in state court, the district court examined the terms of the Rule 68 offer of judgment to determine the scope and effect of a judgment it already had jurisdiction to enforce. Moreover, in protecting its Rule 68 judgment, the district court prudently confined its exercise of ancillary jurisdiction to the scope of the offer of judgment. It thus enjoined Fafel, in precisely the same terms as the offer of judgment Fafel accepted, "from taking any action to seek relief or make claims against defendant arising from or related to the April 2000 termination of the plaintiff from his employment in the Middlesex Sheriff's Department."[14] Far from engaging in a "clear usurpation of power," Lubben, 453 F.2d at 649, the district court justifiably concluded that it had ancillary jurisdiction to enforce its Rule 68 judgment. Accordingly, the injunction it issued was not void for lack of subject-matter jurisdiction to enforce its judgment.

[14]To the extent that Fafel argues on appeal that the terms of the offer of judgment purporting to settle claims in state court fell outside the proper scope of Rule 68, he raises a claim of legal error on the merits of entry of the Rule 68 judgment. Similarly, to the extent Fafel argues that the district court lacked authority to enforce its judgment by issuing an injunction as opposed to some other method of enforcement, he raises a claim of legal error regarding the propriety of issuing an injunction to enforce the underlying Rule 68 judgment. These claims are not before us on appeal from the denial of Fafel's Rule 60(b)(4) motion seeking to vacate the injunction entered by the district court to enforce the Rule 68 judgment as void for lack of subject-matter jurisdiction.

jurisdiction, and it properly rejected the magistrate judge's recommendation to the contrary.

**Affirmed**.