[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 636 
Charles E. Robinson and Jacqueline B. Robinson appeal from the Baldwin Circuit Court's judgment denying their claims for termination of Sunrise Village Condominium, a condominium in Gulf Shores, pursuant to the provisions of the Condominium Ownership Act, § 35-8-1 et seq., Ala. Code 1975 ("the Act"), and partition of the condominium property pursuant to §35-8-20. The trial court held that the Robinsons failed to prove the prerequisites to termination — the total destruction of all the improvements on the condominium property or the substantial destruction, deterioration, or obsolescence of the condominium property. We affirm.
 I. Facts and Procedural Background
The Robinsons and all the defendants (hereinafter "the adverse owners") are either owners of units in the condominium or holders of security interests in one or more units in the condominium. On September 16, 2004, Hurricane Ivan made landfall in Gulf Shores as a category 3 hurricane and damaged the condominium. The condominium is managed by the Sunrise Village Condominium Owners Association, Inc. ("the Association"). The board *Page 637 
of directors of the Association, of which Charles Robinson was a member, sent notice to all owners of units in the condominium, informing them that a special meeting of the Association was to be held and that the "[p]urpose of the meeting is to discuss and vote on options that are available to owners of Sunrise Village Condominium Owners Association, Inc."
At the meeting, a motion to repair the condominium failed, and a vote was taken on whether to terminate the condominium, i.e., to remove it from the provisions of the Act. This vote was taken over the objection of one owner on the basis that the notice to the owners that the issue of termination was to be discussed at the meeting was inadequate according to the Association's bylaws. Twenty owners voted to remove the condominium from the provisions of the Act; 11 voted not to terminate; and 4 abstained from voting on the ground that the vote was improper because notice was inadequate. The Act requires a unanimous vote to remove a condominium from its provisions, with certain exceptions, which will be discussed later.
Following the failed termination vote, the Robinsons, in their individual capacities, filed a complaint in the Baldwin Circuit Court for termination of the condominium under the Act and for a partition of the property. The trial court held a bench trial at which the parties presented extensive testimony concerning the degree of damage to the condominium and the value of the land on which the condominium was located. The trial court subsequently entered findings of fact and conclusions of law and a final judgment in favor of the adverse owners, denying the Robinsons' claims for termination of the condominium and partition of the property. The Robinsons appealed.
 II. Standard of Review
The evidence in this case was presented to the trial judge in a bench trial. "`When a judge in a nonjury case hears oral testimony, a judgment based on findings of fact based on that testimony will be presumed correct and will not be disturbed on appeal except for a plain and palpable error.'" Smith v.Muchia, 854 So.2d 85, 92 (Ala. 2003) (quoting AllstateIns. Co. v. Skelton, 675 So.2d 377, 379 (Ala. 1996)); see also First Nat'l Bank of Mobile v. Duckworth,502 So.2d 709 (Ala. 1987). As this Court has stated,
 "`The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses.' Hall v. Mazzone, 486 So.2d 408, 410 (Ala. 1986). The rule applies to `disputed issues of fact,' whether the dispute is based entirely upon oral testimony or upon a combination of oral testimony and documentary evidence. Born v. Clark, 662 So.2d 669, 672
(Ala. 1995). The ore tenus standard of review, succinctly stated, is as follows:
 "`[W]here the evidence has been [presented] ore tenus, a presumption of correctness attends the trial court's conclusion on issues of fact, and this Court will not disturb the trial court's conclusion unless it is clearly erroneous and against the great weight of the evidence, but will affirm the judgment if, under any reasonable aspect, it is supported by credible evidence.'"
Reed v. Board of Trs. for Alabama State Univ.,778 So.2d 791, 795 (Ala. 2000) (quoting Raidt v. Crane,342 So.2d 358, 360 (Ala. 1977)). However, "that presumption [of correctness] has no application when the trial court is shown to have improperly applied the law to the facts." Ex parteBoard of Zoning Adjustment of Mobile, 636 So.2d 415, 417
(Ala. 1994). *Page 638 
 III. Analysis
The Robinsons filed this action under § 35-8-20(b), Ala. Code 1975, seeking to remove the condominium from the provisions the Act. Section 35-8-20(b) provides:
 "A circuit court may grant the petition of any unit owner for a removal of the condominium property from the provisions of this chapter and a partition under the following circumstances:
 "(1) In the event of total destruction of all improvements of the condominium property and no agreement is reached to rebuild such improvements within a reasonable time, or such rebuilding has not been completed within a reasonable time.
 "(2) In the event of substantial destruction, deterioration or obsolescence of the condominium property and no agreement is reached to repair, reconstruct or rebuild such property within a reasonable time, or such repair, reconstruction or rebuilding has not been completed within a reasonable time, and at least a majority of votes of unit owners shall be cast in favor of such removal."
(Emphasis added.) Section 35-8-20(b) allows a unit owner to remove a condominium from the provisions of the Act upon a majority vote of all condominium owners, i.e., without the unanimous vote that is required for termination of a condominium under § 35-8-20(a). Because the vote to terminate the condominium was not unanimous, the Robinsons must rely on the alternate grounds for termination set forth in § 35-8-20(b).
Section 35-8-20(b)(1) provides for termination of a condominium without regard to the wishes of the majority of the condominium owners "[i]n the event of total destruction of all improvements of the condominium property and no agreement is reached to rebuild such improvements within a reasonable time." The Robinsons argue that because the cost to repair the condominium exceeds the fair-market value of the improvements of the condominium property, there was a "total destruction of all improvements of the condominium property" sufficient to trigger the termination provisions of § 35-8-20(b)(1). However, the Robinsons fail to cite any Alabama caselaw to support that proposition.
Black's Law Dictionary defines "total loss" as follows:
 "[T]he complete destruction of insured property so that nothing of value remains and the subject matter no longer exists in its original form. Generally, a loss is total if, after the damage occurs, no substantial remnant remains standing that a reasonably prudent uninsured owner, desiring to rebuild, would use as a basis to restore the property to its original condition. — Also termed actual total loss."
964-65 (8th ed.2004). Black's defines the separate concept of "constructive total loss" as "[s]uch serious damage to the insured property that the cost of repairs would exceed the value of the thing repaired. — Also termedconstructive loss." 964. To give the language of §35-8-20(b)(1) the meaning the Robinsons ascribe would require us to rewrite the statute so as to define "total destruction" as "constructive total loss." Had the legislature intended to define "total destruction of all improvements of the condominium property" in terms broader than their plain meaning, it could have easily used words that would embrace the concept of constructive total loss.
When statutory language is clear and unambiguous, this Court is compelled to give that language its plain meaning, giving effect to the apparent intent of the *Page 639 
legislature. Ex parte T.B., 698 So.2d 127, 130
(Ala. 1997) ("When the language of a statute is plain and unambiguous, . . . courts must enforce the statute as written by giving the words of the statute their ordinary plain meaning — they must interpret that language to mean exactly what it says and thus give effect to the apparent intent of the Legislature."). Applying the statute according to its plain meaning, that is, total destruction means total destruction, notconstructive total loss, we must determine whether the improvements to the condominium property were totally destroyed.
The adverse owners presented evidence to the trial court indicating that the piling system of the condominium remained intact following Hurricane Ivan, that the roofs on both condominium buildings had been replaced, and that the walls and structural system of the condominium were largely unaffected. Moreover, the Robinsons concede that the condominium improvements, following Hurricane Ivan, had a fair-market value of $991,416. Because the trial court's finding of absence of total destruction is supported by credible evidence, we affirm its rejection of § 35-8-20(b)(1) as a basis for termination.
In the alternative, the Robinsons rely on § 35-8-20(b)(2), which provides that, in the event of "substantial destruction, deterioration or obsolescence of the condominium property," the condominium can be removed from the provisions of the Act by a majority vote of the unit owners. Relying on the Alabama Law Institute's report to the Counsel of the Advisory Committee,[1] the Robinsons contend that the term "condominium property" in § 35-8-20(b)(2) was never meant to be applied so as to include the real property upon which the improvements were made. We are guided by the unambiguous terms of the Act. "Condominium property" is defined in § 35-8-2(6), as "[t]he property covered by the [condominium] declaration and all easements, rights and interests belonging thereto or intended for the benefit thereof."
The property covered by the declaration of condominium of Sunrise Village Condominium included:
 "1. The land upon which the buildings and other improvements are located.
 "5. Grounds, yards, gardens, recreation and community facilities, laundry facilities, service areas, service facilities, parking spaces and areas and driveways and driveway areas.
 "7. All other parts of the condominium property and all apparatus, facilities and installations for common use or necessary or convenient to the existence or safety of the condominium."
Further, another board member testified at trial that the purchase of a condominium unit includes "1/36 of the common elements, which includes the land and the beach," and that the sale of a condominium unit includes "[t]he value of everything, the property and the structure." Therefore, under §35-8-20(b)(2), the condominium could be terminated when there is "substantial destruction, deterioration or obsolescence of the condominium property," which, in this case, includes the real property upon which the improvements were built.
Although the Robinsons concede that the definition of "condominium property" in the condominium declaration and the *Page 640 
Act encompasses both the real property and the improvements thereon, they insist that it does not follow that the value of the real property should be considered when determining whether there has been substantial destruction, deterioration, or obsolescence of the condominium property. This contention ignores the clear, unambiguous language of § 35-8-20(b)(2). Had the legislature intended to exclude the value of real property from the operation of § 35-8-20(b)(2) it could have easily used a term less expansive than "condominium property."
The trial court noted in its findings of fact and conclusions of law that "[a]t trial . . . [the Robinsons'] experts testified that the Condominium land alone, without any improvements, has substantial value.[2] The [Robinsons] presented no evidence whatsoever to show that the Condominium property as defined by the Declaration of Condominium, and thus by the Act, had been substantially destroyed." Accordingly, the trial court found that the Robinsons failed to meet their burden of proof under § 35-8-20(b)(2), because they did not show that the value of the condominium property, taking into account the value of the real property and the improvements thereon, was substantially destroyed or deteriorated, or had undergone substantial obsolescence. Because the trial court's finding that there had not been substantial destruction, deterioration, or obsolescence of the condominium property is supported by credible evidence, we affirm its order rejecting § 35-8-20(b)(1) as a basis for termination of the condominium.[3]
 IV. Conclusion
Section 35-8-20(b) clearly and unambiguously provides for the termination of a condominium under two specific circumstances. Because the trial court's conclusion that the Robinsons failed to prove the applicability of either set of circumstances in § 35-8-20(b) is based upon a correct application of the law and is supported by credible evidence, we affirm.
AFFIRMED.
NABERS, C.J., and WOODALL, SMITH, and PARKER, JJ., concur.
[1] The commentary in this report, upon which the Robinsons rests their argument for an alternative reading of §35-8-20(b), has not been published in the commentary to §35-8-20(b), nor was that commentary adopted by the legislature in the enactment of the Act.
[2] There was no evidence of loss of square footage to the real property on which the condominium sits through beach erosion or loss of usable area such as through the presence of standing water on areas of lower elevation, following Hurricane Ivan.
[3] We therefore do not reach the alternative basis for affirmance asserted by the adverse owners in which they challenge the adequacy of the notice of the special meeting of the Association.