32 So.3d 572 (2009)
JEFFERSON COUNTY COMMISSION et al.
v.
Jessica EDWARDS et al.
1080496.
Supreme Court of Alabama.
August 25, 2009.
Opinion Overruling Rehearing September 18, 2009.
*574 William M. Slaughter, Mark D. Hess, and James W. Porter III of Haskell Slaughter Young & Rediker, LLC, Birmingham; and R. Bernard Harwood and Jane Laird Calamusa of Rosen Harwood, PA, Tuscaloosa, for appellants.
Samuel M. Hill of Hill Turner, LLC, Birmingham; James H. McFerrin of McFerrin Law Office, Birmingham; and E. Allen Dodd, Jr., of Scruggs, Dodd & Dodd, Fort Payne, for appellees.
Thomas L. Stewart and Robert M. Rosenberg of Waldrep, Stewart & Kendrick, LLC, Birmingham, for amicus curiae Birmingham-Jefferson Civic Center Authority, in support of the appellants.
LYONS, Justice.
The Jefferson County Commission and other defendants in a declaratory-judgment action appeal from a judgment of the Jefferson Circuit Court that effectively held that by an enactment in 1999 the Alabama Legislature repealed Jefferson County's authority to impose an occupational tax. This Court expedited the proceedings and heard oral arguments from *575 the parties on August 18, 2009. We affirm.

I. Statutory and Decisional-Law Context

This case arises from an exquisitely complex sequence of legislative enactments and related litigation; the facts and procedural history are best understood against that background. In 1967, the Alabama Legislature enacted Act No. 406, which authorized Jefferson County to impose business-license and occupational taxes upon any person engaging in a business for which he or she was not then required to pay a license or privilege tax to either the State of Alabama or Jefferson County. In 1968, Jefferson County enacted a general business-license code, Ordinance No. 1172; however, no occupational tax was imposed at that time.[1] In 1987, Jefferson County enacted Ordinance No. 1120 which, for the first time, imposed an occupational tax. Consistent with Act No. 406, that ordinance exempted from the tax persons who paid license or privilege taxes to the State or Jefferson County.
A class action styled Richards v. Jefferson County was filed in 1992, in which the plaintiffs sought a judgment declaring Jefferson County's occupational tax unconstitutional; the case was assigned to Judge John E. Rochester. Judge Rochester entered an order in that action on June 17, 1999, which this Court described in a subsequent appeal, stating:
"Judge John E. Rochester entered a judgment on November 12, 1998, holding that the exemptions required by § 4 of Act 406 and allowed by Section 1(B) of Ordinance No. 1120 violated the Equal Protection Clause. On June 17, 1999, Judge Rochester entered an order enjoining the County from continuing to collect the occupational tax from the members of the Richards class unless it also collected the tax from [persons who were exempt under the terms of § 4 of Act No. 406 and by Section 1(B) of Ordinance No. 1120]. Pursuant to that order, Jefferson County began collecting the tax from the allegedly exempt taxpayers; also pursuant to Judge Rochester's order, the County placed those newly collected funds in a special escrow account. Jefferson County appeal[ed from this order]."
Jefferson County v. Richards, 805 So.2d 690, 694 (Ala.2001) ("Richards").
After Jefferson County had begun collecting the occupational tax from the exempt taxpayers pursuant to Judge Rochester's order, Phillip Triantos, a Birmingham physician, commenced a separate class action against Jefferson County.
"Triantos sought a judgment declaring that Jefferson County had no authority to impose the occupational tax on the exempt taxpayers and an injunction prohibiting Jefferson County from collecting the occupational tax from the exempt taxpayers; he also sought a refund of all occupational taxes that had been collected from the exempt taxpayers."
*576 Richards, 805 So.2d at 694 (footnote omitted). The members of the Triantos class were persons allegedly exempt from payment of the occupational tax. On January 12, 2000, then Judge Thomas Woodall (who is now a Justice on this Court) "issued the requested declaratory judgment and the requested injunction, finding no lawful basis under which Jefferson County could impose the occupational tax on the members of the Triantos class because the 1967 Act [Act No. 406] conferred no such taxing authority on Jefferson County." Id.[2] Jefferson County appealed from this injunction.
The two appeals were consolidated and resolved in Richards, 805 So.2d at 690. This Court affirmed Judge Woodall's decision in the Triantos action and reversed Judge Rochester's decision in the Richards action. Specifically, this Court held that the Equal Protection Clause of the United States Constitution was not violated by the legislature's recognition in Act No. 406 of exemptions for taxpayers already subject to state licensing taxes. 805 So.2d at 704.
While the Richards litigation and the Triantos litigation, which eventuated in the consolidated appeals in Richards, were pending in the trial court, the legislature, at its 1999 Regular Session, passed Act No. 99-406, which was to be effective as of June 9, 1999, a little more than a week before Judge Rochester struck down Act No. 406 on equal-protection grounds. Act No. 99-406 authorized Jefferson County to levy a business-license tax, § 4, and an occupational tax, § 6, and made 144 line-item appropriations from the proceeds of the taxes so levied and collected, § 21. Act No. 99-406 did not contain any provisions for the repeal of Act No. 406, enacted in 1967. Rather, it gave the Jefferson County Commission the option to elect to come under the new provisions of Act No. 99-406 pursuant to its own plan and schedule. However, the exercise of such an election, when it occurred, would be irrevocable, and the provisions of Act No. 99-406 would then supplant the provisions of Act No. 406. Act No. 99-406 further provided:
"If any occupational tax [imposed hereunder] shall be invalidated by a court of competent jurisdiction from which no further appeal can be taken, then the superseded Act 406 [(1967)] occupational tax shall be fully reinstated and Act 406 [(1967)] shall be given uninterrupted full force and effect with respect to the levy and collection of such Act 406 occupational tax as if the invalidated occupational tax had never been levied. . . ."
Act No. 99-406, § 7(b). Jefferson County never collected taxes pursuant to Act No. 99-406 and, at all times relevant to this action, was acting pursuant to Act No. 406 enacted in 1967.
In Richards, this Court stated: "In 1999, the Legislature purported to repeal Act No. 406 (1967) by adopting Act No. 99-406 and Act No. 99-669. However, Act No. 99-406 was declared unconstitutional by Judge Woodall in Triantos v. Jefferson County." 805 So.2d at 694 n. 2. Judge Woodall determined that Act No. 99-406 was unconstitutional because the requirements for publication and proof of notice of Art. 4, § 106, Ala. Const.1901, were not met in connection with its enactment.
On November 15, 1999, during the 1999 Second Special Session of the Alabama Legislature and while the Triantos litigation was pending, but prior to Judge Woodall's entry of an injunction on January 12, 2000, enjoining enforcement of Act No. 99-406, *577 Rep. Arthur Payne introduced House Bill 29, which, by its terms, expressly repealed "Act 406 of the 1967 Regular Session." (Emphasis added.) A "Fiscal Note" appended to House Bill 29, pursuant to § 29-5-12, Ala.Code 1975, and then current House and Senate rules, estimated that if Jefferson County chose "to collect the occupational tax under Act 99-[406] upon the repeal of the old law [i.e., Act No. 406 (1967),]" an additional $8,000,000 in occupational-tax receipts would be realized in each subsequent fiscal year. House Bill 29 was enacted by the legislature on November 23, 1999, approved by the Governor on November 29, 1999, and designated as Act No. 99-669. The act, by its terms, was to become effective April 1, 2000.
The Jefferson County Employees' Association and others promptly sued Jefferson County, seeking a determination of the invalidity of Act No. 99-669. In that action (hereinafter "the JCEA action"), the Jefferson Circuit Court, Judge William A. Jackson, entered an order on March 8, 2000, finding Act No. 99-669 unconstitutional. Among other things, the court found (1) that Act No. 99-669 was passed during a special session; (2) that the subject matter of the act was not included in the Governor's proclamation declaring a special session; (3) that, because the subject matter of the act was not mentioned in the proclamation, under Ala. Const.1901, § 76, a minimum of two-thirds of the 53 members of the House of Representatives (36 votes) and two thirds of a quorum of 18 members of the Senate (12 votes) was needed for the act to pass; and (4) that the act received only 14 votes in the House and 11 votes in the Senate. Accordingly, the circuit court held that Act No. 99-669 was unconstitutional and that its repeal of Act No. 406 (1967) was void. No party appealed the circuit court's decision.
In Richards, this Court stated: "Act No. 99-669 was declared invalid in Jefferson County Employees' Association et al. v. Jefferson County, Alabama et al. (CV-00-0297), by Circuit Judge William A. Jackson." 805 So.2d at 694 n. 2. With respect to the validity of both Act No. 99-406, declared unconstitutional by Judge Woodall, and Act No. 99-669, this Court concluded: "These issues are not before this Court in these appeals." Id. (emphasis added).
On March 21, 2000, during the 2000 Regular Session and almost two weeks after the circuit court's order in the JCEA action, the legislature passed Act No. 2000-215, which had also been introduced and sponsored in the Alabama House of Representatives by Rep. Payne. By Act No. 2000-215, the legislature directly "imposed an occupational tax to replace any existing occupational tax" levied by the county, § 3(a);[3] provided a comprehensive scheme for its administration and enforcement; and provided for the appropriation of the tax receipts. Section 16 of the act "validated, ratified, and confirmed" the occupational tax theretofore levied and collected under the authority of Act No. 406 (1967). Section 19 purported to repeal "Act 406 of the 1967 Regular Session . . . and Act 99-406, 1999 Regular Session." Act No. 2000-215 was to "become effective immediately upon its passage and approval by the Governor or upon its otherwise becoming law." According to the Acts of Alabama for the 2000 Regular Session, Act No. 2000-215 "became a law under Section 125 of the Constitution on April 7, 2000 without approval by the Governor."
*578 Act No. 2000-215 was immediately attacked in the Jefferson Circuit Court. As this Court explained in subsequent appellate proceedings in that action:
"In March 2000, [immediately after passage of Act No. 2000-215,] Richard Izzi and the other plaintiffs in [one of the cases appealed], attorneys and other professionals licensed pursuant to the State's general licensing statutes who have historically been exempt from payment of Jefferson County's occupational tax, filed a complaint [in the Jefferson Circuit Court] seeking declaratory and injunctive relief regarding Act No. 2000-215. The plaintiffs asserted that Act No. 2000-215 was unconstitutional on numerous grounds. The plaintiffs also sought a refund of all occupational taxes collected pursuant to Act No. 2000-215."
Richards v. Izzi, 819 So.2d 25, 28 (Ala. 2001) ("Izzi"). The case was assigned to then Circuit Judge (now Justice) Woodall.
"Judge Woodall held that Act No. 2000-215 was a local law that imposed a privilege license tax upon all persons working in Jefferson County, including those persons subject to the State's general licensing statutes; Judge Woodall also held that Act No. 2000-215 directly conflicted with several general laws of this State, which provide that no license tax shall be paid to a county by those persons subject to the State's general licensing statutes. Thus, Judge Woodall concluded that Act No. 2000-215 violated § 105, art. IV, of the Alabama Constitution of 1901. Judge Woodall entered an order enjoining Jefferson County from enforcing or implementing Act No. 2000-215."
819 So.2d at 28-29.
This Court affirmed Judge Woodall's decision on the basis that the publication notice required for Act No. 2000-215, which all parties agreed was a local law, was inadequate. This Court explained its finding as to deficient publication in Izzi as follows:
"For example, Act No. 2000-215 purports to repeal Act No. 406, a general licensing statute that has been in place for over 30 years; however, this significant and material aspect of the legislation is completely omitted from the published notice. Likewise, the fact that Act No. 2000-215 purports to impose an occupational tax upon all natural persons working in Jefferson County, even those subject to the State's general licensing statutes and those historically subject to the County's `piggyback' tax, is omitted from the published notice as well. The fact that the County and various groups of taxpayers have been engaged in extensive litigation related to this issue is a clear indicator that this was a substantial and material aspect of the proposed legislation as to which those persons affected by the proposed legislation should have been made aware before its passage."
819 So.2d at 32. This Court declined to consider the other bases relied upon by Judge Woodall for declaring Act No. 2000-215 unconstitutional.
The final link in the complex chain of events that forms the history of the matters giving rise to this proceeding is an opinion of this Court on an issue of Alabama constitutional law completely unrelated to Jefferson County occupational-tax litigation. On May 3, 2005, this Court held, sua sponte, that under the separation-of-powers doctrine as mandated by § 43 of the Alabama Constitution of 1901,[4] the judicial branch of government does not *579 have jurisdiction to interpret the rules and procedures of the Alabama Legislature and that because the Alabama Constitution grants the legislature the power to establish the rules of its own proceedings, the determination whether, by application of those rules, a bill is passed with a sufficient number of votes is a nonjusticiable political question. Birmingham-Jefferson Civic Ctr. Auth. v. City of Birmingham, 912 So.2d 204 (Ala.2005) ("BJCCA").

II. Procedural History of Case No. 1080496

In May 2007, Jessica Edwards filed a complaint on behalf of a class composed of taxpayers (hereinafter "the taxpayers") against the Jefferson County Commission and several officials of Jefferson County (hereinafter collectively "the County"). The taxpayers alleged that the occupational tax levied by the County was being collected unlawfully because, they alleged, the law that authorized the tax, Act No. 406 (1967), had been repealed by Act No. 99-669. The taxpayers contended that, on the authority of BJCCA, which declined to exercise judicial review of legislative rules for counting votes in the legislature, the trial court in the JCEA action, which had declared Act No. 99-669 invalid for failure to receive sufficient votes, lacked subject-matter jurisdiction to have made such determination. The taxpayers reasoned that the trial court in the JCEA action could not interpret the legislature's rules and procedures for voting without deciding a political question contrary to this Court's obligation to respect the autonomy of the legislature as stated in BJCCA.
The action was assigned to Judge David A. Rains. The taxpayers moved for class certification, and both the taxpayers and the County moved for a summary judgment. On January 12, 2009, the trial court entered an order certifying a class. After a subsequent revision, the class was composed of persons and entities, except those who were parties to the JCEA action, who had paid the occupational tax pursuant to Act No. 406 (1967) and Ordinance No. 1120 since April 1, 2000, the effective date of Act No. 99-669. On January 12, 2009, the trial court also entered a summary judgment in favor of the taxpayers.
The trial court identified three issues raised by the parties. The trial court framed the first issue as "[w]hether the March 8, 2000, ruling of the trial court in [the JCEA action] declaring Act 1999-669 unconstitutional because of an insufficient number of affirmative votes bars this Court from considering the same question under the doctrine of res judicata." The trial court held that the doctrine of res judicata based upon the judgment in the JCEA action did not bar it from considering the question because, it reasoned, there was no identity of parties between the two actions. The trial court also noted, but did not rely on, the taxpayers' contention that the JCEA action was a "friendly" suit in that the plaintiff employees' association and the defendant county in the JCEA action both contended that Act No. 406 (1967) was not repealed by Act No. 99-669.
Next, the trial court considered the issue "[w]hether the Act 1999-669 repeal of the Act 1967-406 occupational tax is an unconstitutional infringement on the freedom to contract to the extent that said tax is pledged to secure government bonds." Because a final payment under the contract pledging the proceeds of the tax had *580 previously been made, the trial court found this issue to be moot.
Finally, the trial court considered the issue "[w]hether Act 1999-669, which was enacted to repeal Act 1967-406 was superseded by the enactment of Act 2000-215, which also repealed Act 1967-406. . . ." The trial court concluded that because Act No. 2000-215 was held unconstitutional in Izzi, it cannot be deemed to have impliedly repealed Act No. 99-669. The trial court further concluded that because Act No. 99-669 was struck down on grounds that involve a nonjusticiable political question, the trial court in the JCEA action lacked subject-matter jurisdiction based on the rationale of BJCCA. As a result, the trial court determined that the judgment in the JCEA action declaring Act No. 99-669 invalid was void and that the express repeal of Act No. 406 in Act No. 99-669 stands as the last expression on the point by the legislature.[5]
The County appeals, arguing that the taxpayers' action is barred by the doctrine of res judicata based upon proceedings in Richards; that the taxpayers' action is an impermissible attempt to collaterally attack the JCEA action; that this Court's decision in BJCCA should have prospective effect only; that, based on various evidence of legislative intent, the trial court erred in enforcing the plain language of Act No. 99-669; that Act No. 99-669 is unconstitutional in that it violates the Contracts Clauses of the United States and Alabama Constitutions; and that, because Act No. 99-406 has been held unconstitutional, Act No. 99-669 is likewise constitutionally infirm.

III. Standard of Review

The standard by which this Court will review a ruling on a motion for a summary judgment is well established:
"`The standard of review applicable to a summary judgment is the same as the standard for granting the motion. . . .' McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957, 958 (Ala.1992).
"`A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present "substantial evidence" creating a genuine issue of material fact"evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." Ala.Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).'
"Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So.2d 1349, 1350 (Ala. 1994). Questions of law are reviewed de novo. Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala. 2004)."
Alabama Elec. Coop., Inc. v. Bailey's Constr. Co., 950 So.2d 280, 283 (Ala.2006).

*581 IV. Whether the Doctrine of Res Judicata Bars This Action

The taxpayers contend that Act No. 99-669 was validly enacted and that it repealed Act No. 406 (1967). The County asserts the defense of res judicata, pointing to the failure of a class composed of Jefferson County taxpayers in Richards to assert that Act No. 99-669 repealed Act No. 406 (1967), thus, the County says, barring the taxpayers here from making such an argument. We note that before the trial court the County relied on the decision in the JCEA action to support its defense of res judicata, and the trial court rejected the defense based on an analysis of the JCEA action. On appeal, as previously noted, the County relies on Richards as the basis for asserting the defense of res judicata. The County makes no argument on appeal as to the effect of the JCEA action as a basis for invoking the bar of res judicata. Failure to argue error as to an issue results in waiver. See Pardue v. Potter, 632 So.2d 470, 473 (Ala. 1994). The parties dispute whether, in the trial court, the County timely raised its defense of res judicata based on Richards. However, even assuming that the County's argument of the res judicata issue based on Richards was timely, we affirm as to this issue.
There are four elements of res judicata:
"(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in both actions. If those four elements are present, then any claim that was, or that could have been, adjudicated in the prior action is barred from further litigation."
Equity Res. Mgmt., Inc. v. Vinson, 723 So.2d 634, 636 (Ala.1998). The issue of identity of causes of action, the fourth element of res judicata, turns on whether the same evidence "substantially supports both actions," Hughes v. Martin, 533 So.2d 188, 191 (Ala.1988) (citing Geer Bros., Inc. v. Crump, 349 So.2d 577 (Ala.1977)), or, put another way, whether the same evidence is applicable to both actions. Gulf American Fire & Cas. Co. v. Johnson, 282 Ala. 73, 209 So.2d 212 (1968). See also Greene v. Jefferson County Comm'n, 13 So.3d 901, 913 (Ala.2008) (finding identity of causes of action where "the claims in the two cases arise out of the same nucleus of operative facts" and where the parties in the subsequent action "rely on the same evidence and advance many of the same arguments" asserted by the plaintiffs in the former litigation).
The taxpayers in Richards contended that Act No. 99-669 violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because of an alleged disparity in the treatment of similarly situated taxpayers. In this action, as previously noted, the taxpayers contend that Act No. 99-669 was validly enacted and that it repealed Act No. 406 (1967). The facts underlying this claim dealing with the validity of Act No. 99-669 are wholly unrelated to the facts set forth in the complaint in Richards. We cannot, therefore, conclude that Richards and this action share the same nucleus of facts and turn on sufficiently similar evidence to warrant the application of the defense of res judicata. See Greene, supra.

V. Effect of the JCEA Action and BJCCA

A. Whether the Holding in the JCEA Action Declaring Act No. 99-669 Invalid Is Dispositive

The taxpayers attack the validity of the judgment in the JCEA action, in which the *582 trial court held that Act No. 99-669 was invalid because it failed to receive sufficient votes in the legislature. They argue that this Court's rationale in BJCCA is inconsistent with the trial court's rationale in the JCEA action. In BJCCA, as previously noted, this Court concluded that, under the facts there presented, whether certain contested bills received sufficient votes in the legislature for passage was a nonjusticiable political question over which the judicial branch lacked subject-matter jurisdiction. According to the taxpayers, the judgment in the JCEA action is likewise void for lack of subject-matter jurisdiction.
In its order of January 12, 2009, the trial court in the underlying declaratory-judgment action held:
"[T]he Court in BJCC[A] held that the determination of whether an Act is passed with a sufficient number of votes is a nonjusticiable political question, and that if the Legislature follows its own rules for the enactment of law, the judicial branch of government lacks jurisdiction to invalidate such enactments.
"Based on the BJCC[A] case this Court concludes that the trial court in the [JCEA] case acted without jurisdiction to determine the validity or invalidity of Act 1999-669.
"Because Act 2000-215 was declared unconstitutional in Richards v. Izzi, 819 So.2d 25 (2001), Act 2000-215 did not supersede Act 1999-669 nor did it effectively repeal Act 1999-669. Because the court in the [JCEA] case lacked jurisdiction to determine the sufficiency of the Legislature's vote to enact Act 1999-669, the [JCEA] ruling did not invalidate Act 1999-669. The issue of the validity of Act 1999-669 turns, therefore, on the precedent established by BJCC[A].

"Based on the undisputed facts this Court finds that the Defendants' challenge to the constitutionality of Act 1999-669 raises a nonjusticiable political question. Act 1999-669 was enacted in accordance with the rules of the Legislature. Therefore, Act 1999-669 repealed Act 1967-406 by the express and unambiguous language of said Act 1999-669."
The County argues that BJCCA is distinguishable from this case in that it dealt with the sufficiency of votes at a regular session of the legislature and, therefore, did not implicate concerns peculiar to a special session regarding the authority of the legislature vis-a-vis another branch of government, i.e., the executive branch. Act No. 99-669 was enacted at a special session, and the subject matter of the act was not designated by the Governor in the call for the special session. The County notes that pursuant to § 76, Ala. Const. 1901, "[w]hen the legislature shall convene in a special session, there shall be no legislation upon subjects other than those designated in the proclamation of the governor calling such session, except by a vote of two-thirds of each house." The County points out that the dispute in BJCCA arose in the context of legislation passed at a regular session and governed by § 63, Ala. Const. 1901, providing for passage of a bill by "a majority of each house," unless otherwise provided in the constitution. We must determine whether the court in the JCEA action impermissibly considered and ruled on a nonjusticiable political question, as the taxpayers contend, or whether it permissibly decided a question arising under provisions of the Alabama Constitution that strike the balance of power between the legislative branch and the executive branch of government and, therefore, does not involve a nonjusticiable political question, as the County contends.
*583 A court has jurisdiction to determine its own jurisdiction.
"`[T]he authority is clear to the effect that every court of general jurisdiction has judicial power to determine the question of its own jurisdiction.' Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 [(1938)]; Texas & Pacific Railway Co. v. Gulf, Colorado & Sante Fe Railway Co., 270 U.S. 266, 46 S.Ct. 263, 70 L.Ed. 578 [(1926)]."
Baggett Transp. Co. v. International Bhd. of Teamsters, 289 Ala. 666, 669, 270 So.2d 800, 802 (1972). In BJCCA, this Court exercised jurisdiction to determine the question of its own jurisdiction based on the facts before the Court in that case and found that it did not have subject-matter jurisdiction. The record in BJCCA showed the passage of certain bills by a majority of the legislature during a regular session under the rules and procedures by which the legislature determines that a bill receives a sufficient number of votes needed in order to pass.[6] This Court held that judicial review of the legislature's criteria for attaining a simple majority necessary for the passage of a bill was a nonjusticiable political question reserved to the legislature by the separation-of-powers provision of the Alabama Constitution of 1901, Art. III, § 43. 912 So.2d at 205.
The question before this Court in BJCCA was whether certain bills in a regular legislative session had passed in accordance with § 63, Ala. Const.1901. 912 So.2d at 207. The Court did not there deal with the interplay of another provision of the constitution, nor did the Court have facts before it indicating that a majority was not attained under any rule or procedure utilized by the legislature. In this proceeding there is a separate provision of the constitution in play, § 76, Ala. Const.1901, requiring a two-thirds majority in order to pass any act in a special session of the legislature the subject matter of which was not designated by the Governor in the call for the special session.
The County argues that BJCCA applies only to legislation enacted during a regular session in accordance with § 63 and that it should not be extended to legislation enacted during a special session in accordance with § 76. The County maintains that it is appropriate for the judiciary to resolve issues pursuant to § 76 by resolving the balance of power between the legislative and executive branches of government. The County argues in its brief as follows:
"Section 122 of the Alabama Constitution gives the Governor the power to call a special session of the Legislature and requires the Governor to `state specifically in such proclamation each matter concerning which the action of the body is necessary.' Section 76 dovetails with § 122 and requires the Legislature to pass legislation by `two-thirds of each house', rather than by a simple majority, if it wishes to legislate on matters other than those identified by the Governor:
"`When the legislature shall be convened in special session, there shall be no legislation upon subjects other than those designated in the proclamation of the governor calling such session, except by a vote of two-thirds of each house.'
"Ala. Const., § 76. . . ."
County's brief, at 44-45.
The County acknowledges this Court's statement in BJCCA that "[o]ur Constitution *584 contains no identifiable textual limitation on the legislature's authority with respect to voting procedures that would permit judicial review of those procedures," 912 So.2d at 221, but argues that if the judicial branch did not review the voting procedures used to pass challenged legislation in a special session, the Governor's power could be compromised. Before the trial court, the County illustrated its argument with an example of an instance that, it said, would frustrate constitutional provisions such as § 76 that call for a heightened majority, i.e., if the legislative practice of counting the votes of those present and voting yielded a vote tally of 1-0. Under this scenario, 100% of the votes cast favor passage, 100% obviously exceeds the requirement of a two-thirds majority, and, under BJCCA, it is not within the power of the Court to second-guess a legislative rule that satisfies the constitutional requirement of a two-thirds majority. The County's attempt at a reductio ad absurdum argument would also apply with equal force to a vote of 1-0 at a regular session. Acceptance of the County's argument in this proceeding would require this Court to overrule BJCCA, which we neither have been asked to do nor are inclined to do.
If facts were presented to this Court, for example, where the record reflected a bill not included in the Governor's call in a special session that was passed by a vote such as 4 to 3 (plainly not a two-thirds majority under any means of legislative calculation, as 4 out of 7 votes is less than two-thirds), then this Court, in the process of invoking its jurisdiction for the purpose of determining the question of its own jurisdiction, would face an entirely different set of facts. However, such facts are not here presented, just as the Court in BJCCA was not presented with facts reflecting that the bills being challenged did not receive a simple majority under any means of legislative calculation.
From the record of the proceedings before the trial court in the JCEA action, it is clear that two-thirds of the legislature voted aye under the rules formulated by the legislature for reaching that conclusion. The court in the JCEA action should have looked no further. However, it went beyond that threshold and struck down Act No. 99-669 based on its view of the meaning of the requirement for a two-thirds majority. In so doing, the court in the JCEA action decided a nonjusticiable political question and acted without subject-matter jurisdiction; therefore, its judgment holding Act No. 99-669 invalid is void.
Relying upon the principles in BJCCA, we again decline to become involved in a matter as to which the legislature is entitled to rely upon its own rules and procedures, i.e., determining the sufficiency of the votes cast to pass Act No. 99-669. The fact that we here deal with a different provision of the constitution concerning a special session as opposed to a regular session does not bar our application of the principles discussed in BJCCA. As the BJCCA Court stated:
"In the case before us today, there is no clear constitutional provision binding the legislature to a certain manner of determining whether [`two-thirds of each house'] has voted in favor of a bill [in a special session]. . . . [T]he judiciary should not question the determination by the legislative branch of whether a bill was passed by the requisite [two-thirds] vote of the house. To do so would be to demonstrate a lack of the respect due a coordinate branch of government."
912 So.2d at 221. Under the facts presented, the validity of Act No. 99-669 is a nonjusticiable political question; therefore, *585 the void judgment in the JCEA action had no effect upon it and is not dispositive in this case. Our holding as to this issue requires that we pretermit any discussion of other arguments raised by the parties concerning the JCEA action.[7]

B. Whether BJCCA Is Entitled to Prospective Application Only

We concluded in Part V.A. that the trial court in the JCEA action lacked jurisdiction to determine the validity of Act No. 99-669 because it was presented with a nonjusticiable political question. Only if this Court allowed BJCCA to have prospective application could the trial court's judgment in this proceedingholding that the judgment in the JCEA action was void for want of subject-matter jurisdictionbe reversed.
The County contends that, assuming the judgment in the JCEA action is void, the ruling in BJCCA should be applied prospectively only. The County says BJCCA represents either a case of first impression establishing a new principle of law or an overruling of clear precedent on which litigants may have relied. In either event, according to the County, judicial discretion can be applied to determine whether BJCCA should be limited in its retroactive effect. In Griffin v. Unocal Corp., 990 So.2d 291 (Ala.2008), the County says, this Court embraced the three factors outlined in Chevron Oil Co. v. Huson, 404 U.S. 97, 106-07, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), for determining whether a decision should be applied prospectively: first, the decision "must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied,. . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed"; second, the court "must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation"; and, third, the court must weigh "the inequity imposed by retroactive application, for `[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the "injustice or hardship" by a holding of nonretroactivity.'" 990 So.2d at 313 (dissenting opinion of Harwood, J., in Cline v. Ashland, Inc., 970 So.2d 755, 761 (Ala.2007), attached as an appendix to and adopted as the opinion of the Court in Griffin). The County concludes: "These three factors overwhelmingly *586 lead to the conclusion that this Court's decision in BJCCA should be applied prospectively." County's brief, at 60-61.
The taxpayers cite authority from this Court stating the rule that retrospective application is the norm. See Alabama State Docks Terminal Ry. v. Lyles, 797 So.2d 432, 439 (Ala.2001) ("In general, with regard to civil matters, prospective-only decision-making within the realm of constitutional law is disfavored. `Since the Constitution does not change from year to year; since it does not conform to our decisions, but our decisions are supposed to conform to it; the notion that our interpretation of the Constitution in a particular decision could take prospective form does not make sense.'" (quoting American Trucking Ass'ns, Inc. v. Smith, 496 U.S. 167, 201, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990) (Scalia, J., concurring))).
This Court was not confronted with a matter of constitutional magnitude in Griffin. We there dealt only with the construction to be accorded the term "accrued" in § 6-2-30(a), Ala.Code 1975. BJCCA dealt with the application of the constitutional mandate of separation of powers as set forth in § 43 of the Alabama Constitution of 1901. Pursuant to our endorsement in Lyles of Justice Scalia's view that prospective-only application of a constitutional principle "does not make sense," we decline to give BJCCA prospective application only.[8]

VI. Whether the Trial Court Erred in Enforcing the Plain Language of Act No. 99-669

Act No. 99-669 states: "Act 406 of the 1967 Regular Session (Acts 1967, p. 1031), relating to a license or privilege tax upon persons engaging in certain business' in Jefferson County, is repealed." The County and the taxpayers agree that this language is clear and unambiguous. This Court has stated:
"When statutory language is clear and unambiguous, this Court is compelled to give that language its plain meaning, giving effect to the apparent intent of the legislature. Ex parte T.B., 698 So.2d 127, 130 (Ala.1997) (`When the language of a statute is plain and unambiguous,. . . courts must enforce the statute as written by giving the words of the statute their ordinary plain meaning they must interpret that language to mean exactly what it says and thus give effect to the apparent intent of the Legislature.')."
Robinson v. Evans, 959 So.2d 634, 638-39 (Ala.2006). This Court has also stated that "`when possible, the intent of the legislature should be gathered from the language of the statute itself.'" Perry v. City of Birmingham, 906 So.2d 174, 176 (Ala.2005) (quoting Beavers v. Walker County, 645 So.2d 1365, 1376 (Ala.1994)). See also Alfa Mut. Ins. Co. v. City of Mobile, 981 So.2d 371, 379 (Ala.2007) ("[R]egardless of this Court's view of the reasonableness or ultimate wisdom of the language used in a duly enacted statute, we are bound to interpret that language to mean exactly what it says. As we stated in DeKalb County LP Gas Co. v. Suburban Gas, Inc., 729 So.2d 270, 276 (Ala. 1998): `It is true that when looking at a statute we might sometimes think that the ramifications of the words are inefficient or unusual. However, it is our job to say what the law is, not to say what it should *587 be. Therefore, only if there is no rational way to interpret the words as stated will we look beyond those words to determine legislative intent. To apply a different policy would turn this Court into a legislative body, and doing that, of course, would be utterly inconsistent with the doctrine of separation of powers.'").
The County argues that the contemporaneous circumstances of the enactment of Act No. 99-669 demonstrate that the legislature never intended that Act No. 99-669 be enforced. Specifically, under various theories, the County argues that the content and history of Act No. 99-406 and Act No. 99-669 show that Act No. 99-669 was not passed to repeal the occupational tax, but to coerce the County into substituting Act No. 99-406 for Act No. 406 (1967). The County also argues that Act No. 2000-215, which expressly repealed Act No. 406 (1967) but was determined to be invalid in Izzi, supra, evidences the legislature's intent not to repeal Act No. 406 via Act No. 99-669.
To support its argument that this Court should look beyond the plain language of Act No. 99-669, the County relies upon Archer Daniels Midland Co. v. Seven Up Bottling Co. of Jasper, Inc., 746 So.2d 966, 969 (Ala.1999), in which this Court stated: "[W]hen circumstances surrounding the enactment of a statute cast doubt on the otherwise clear language of the statute, we must look to other factors in determining legislative intent." The County also relies on City of Bessemer v. McClain, 957 So.2d 1061, 1075 (Ala.2006), which quotes Archer Daniels.
In Archer Daniels, this Court construed § 6-5-60, Ala.Code 1975, and explained:
"[T]here is no language in § 6-5-60 that conclusively indicates an intent on the Legislature's part to regulate transactions involving the shipment of goods through interstate commerce. Because the language of § 6-5-60, standing alone, is not conclusive on the question of legislative intent, and because other factors, including the legislative history of Alabama's antitrust statutes, as well as the state of the law at the time of their enactment, cast doubt on the original intent of the Legislature, we find it necessary to look beyond the language of the statute."
746 So.2d at 973 (emphasis added).[9] In City of Bessemer, this Court similarly held that the statutory language was not conclusive of the issue presented and, based on Archer Daniels, determined that it was authorized to look beyond the statutory language. 957 So.2d at 1075 ("[T]here is no language in the Act, other than by negative implication, that conclusively indicates an intent to permit such taxation [as that at issue]. Because the Act, standing alone, is not conclusive on the question of legislative intent, and because other factors, including the legislative history of Alabama's embrace of stamps as a means of taxing tobacco, as well as the accepted means of such taxation at the time of the enactment of the Act, cast doubt on the original intent of the legislature, we `find it necessary to look beyond the language of the statute.'" (quoting Archer Daniels, 746 So.2d at 973)). Therefore, under Archer Daniels and City of Bessemer, this Court should look beyond clear statutory language only when that language is not conclusive as to the issue presented to the Court.
*588 As noted above, Act No. 99-669 provides simply that Act No. 406 of the 1967 Regular Session "is repealed." Section 2 of Act No. 99-669 provides: "This Act shall become effective on the first day of April 1, 2000 following its passage and approval by the Governor, or its otherwise becoming law." (Emphasis added.) The language of Act No. 99-669 indicates an overriding intent to repeal Act No. 406 (1967). The language is, therefore, conclusive as to the issue before this Court, i.e., the repeal of Act No. 406, and we will not look beyond the statutory language.

VII. Whether Act No. 99-669 Violates the Contract Clauses of the United States and Alabama Constitutions

The County argues that Act No. 99-669 is unconstitutional because, it argues, it violates the Contract Clauses of the United States and Alabama Constitutions. On April 19, 1988, the County, the City of Birmingham, and the Birmingham-Jefferson Civic Center Authority ("the Authority") entered into an agreement pursuant to which the County pledged to make 20 annual payments of $10,000,000 to pay debt service on the Authority's civic-center bonds. The County also entered into a separate pledge agreement governing the payment of its promised contribution. Both Art. 1, § 10, of the United States Constitution, and Art. I, § 22, Ala. Const. 1901, prohibit the passing of legislation impairing the obligation of contracts. The County argues that the legislature's repeal, by Act No. 99-669, of Act No. 406 (1967)a statute authorizing the collection of a tax upon which bonded contracts, i.e., the County's agreements with the Authority, had been formedviolated the Contract Clauses because it impaired the County's ability to satisfy its obligations to the Authority.[10]
The trial court concluded that the County's argument that Act No. 99-669 violated the Contracts Clauses was moot because, it reasoned, the last of the payments required to be made pursuant to the County's agreements with the Authority had been made. We agree. "The function or duty [of] a judicial tribunal is to determine real controversies relative to the legal rights of persons or property, which are actually involved in the particular case properly brought before it." American Fed'n of State, County & Mun. Employees v. Dawkins, 268 Ala. 13, 18, 104 So.2d 827, 831 (1958). "A moot case or question is a case or question in or on which there is no real controversy; a case which seeks to determine an abstract question which does not rest on existing facts or rights, or involve conflicting rights so far as plaintiff is concerned." Dawkins, 268 Ala. at 18, 104 So.2d at 830-31. See also Case v. Alabama State Bar, 939 So.2d 881, 884 (Ala.2006) (quoting Dawkins). The record shows that the final payment under the County's agreements with the *589 Authority was made in December 2008, before the entry of the trial court's January 12, 2009, judgment. As the taxpayers point out, Act No. 99-669 did not become effective until the date of that judgment, when the trial court concluded that the order in the JCEA action was void for lack of subject-matter jurisdiction. Because the County's obligations under its agreements with the Authority were satisfied before the entry of the January 12, 2009, judgment, the question of the impairment of those obligations by Act No. 99-669 was reduced to "an abstract question which [did] not rest on existing facts or rights." Dawkins, 268 Ala. at 18, 104 So.2d at 831. The trial court, therefore, correctly determined that the issue was moot.[11]
The County argues that it contended all along that Act No. 99-669 violated the Contract Clauses. However, once the contracts had been honored and mootness set in, the County did not assert the applicability of any exception to the doctrine of mootness, e.g., "in those instances where an issue is capable of repetition, yet evades review." Bright v. Calhoun, 988 So.2d 492, 495 (Ala.2008).[12] As a result, the County's arguments regarding the Contract Clauses are barred by the doctrine of mootness, and the trial court's judgment on this issue is affirmed.

VIII. Whether Act No. 99-669 Shares the Constitutional Infirmity of Act No. 99-406

In its principal brief on appeal, the County argues, without citation to authority, that the unconstitutionality of Act No. 99-406 infects Act No. 99-669 because the later act was, according to the County, designed to "coerce" the Jefferson County Commission. This Court has stated:
"Rule 28(a)(10), Ala. R.App. P., requires that arguments in an appellant's brief contain `citations to the cases, statutes, other authorities, and parts of the record relied on.' Further, `it is well settled that a failure to comply with the requirements of Rule 28(a)(10) requiring citation of authority in support of the arguments presented provides this Court with a basis for disregarding those arguments.' State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 822 (Ala.2005) (citing Ex parte Showers, 812 So.2d 277, 281 (Ala.2001)). This is so, because `"it is not the function of this Court to do a party's legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument."' Butler v. Town of Argo, 871 So.2d 1, 20 (Ala. *590 2003) (quoting Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994))."
Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 9 (Ala.2007).
For the first time in its reply brief, the County cites Ex parte Weaver, 871 So.2d 820, 824 (Ala.2003), for the proposition that statutes "dealing with the same subject matter are in pari materia." However, we note "the well-established principle of appellate review that we will not consider an issue not raised in an appellant's initial brief, but raised only in its reply brief." Brown v. St. Vincent's Hosp., 899 So.2d 227, 234 (Ala.2004). Accordingly, we will not consider the County's argument on this issue.

IX. Conclusion

Based on the foregoing, we conclude that the judgment in the JCEA action holding Act No. 99-669 invalid is void for lack of subject-matter jurisdiction and that Act No. 99-669, by its plain language, repealed Act No. 406 of the 1967 Regular Session. All other arguments being inapposite, we affirm the trial court's judgment in favor of the taxpayers.
AFFIRMED.
COBB, C.J., and STUART, SMITH, PARKER, and SHAW, JJ., concur.
WOODALL, BOLIN, and MURDOCK, JJ., recuse themselves.

On Application for Rehearing
LYONS, Justice.
On August 25, 2009, this Court issued its opinion on original submission in an appeal by the Jefferson County Commission and several officials of Jefferson County (hereinafter collectively "the County") upholding the decision of the Jefferson Circuit Court that effectively repealed Jefferson County's authority to impose an occupational tax. The County states in its application for rehearing:
"[The County] argued before the trial court that the JCEA decision,[1] and the subject matter of that court, was unassailable by collateral attack. This Court's holding foreclosing [the County] from making arguments in support of that position is both unnecessarily draconian and incorrect as a matter of law."
County's rehearing application, at 2. The County advanced, for the first time on appeal, its contention that so long as a court's subject-matter jurisdiction is merely arguable, the court's decision is not subject to collateral attack. Without becoming bogged down in the semantics of what constitutes a new theory and what constitutes merely an argument in support of an existing theory, as well as whether confining an appellant to issues presented to the trial court is "Draconian," suffice it to say that we reject on its merits the rule from Fafel v. DiPaola, 399 F.3d 403, 411 (1st Cir.2005) (citing Nemaizer v. Baker, 793 F.2d 58, 65 (2d Cir.1986)), that if a court has merely an "`arguable basis' for concluding that it has subject-matter jurisdiction, the judgment it enters may not be collaterally attacked as void." We decline to engraft such a limitation on our existing precedent as expressed in Randolph County v. Thompson, 502 So.2d 357, 362 (Ala.1987), cited as controlling by both the County and the taxpayers challenging the occupational tax, the plaintiffs in the trial court. This Court in Randolph County quoted with approval 49 C.J.S. Judgments *591 § 414 (1947), which recognized the right of a stranger to the proceeding in which the judgment was entered to impeach the validity of the judgment in a collateral proceeding when the judgment is void. Either subject-matter jurisdiction exists or it does not exist, and the concept of a "twilight zone" that would immunize a judgment from collateral attack when in truth the court issuing the judgment had no subject-matter jurisdiction is inconsistent with our precedent.
The remaining issues raised by the County having been thoroughly considered on original submission, the application for rehearing is overruled.
APPLICATION OVERRULED.
COBB, C.J., and STUART, SMITH, PARKER, and SHAW, JJ., concur.
WOODALL, BOLIN, and MURDOCK, JJ., recuse themselves.
NOTES
[1] Subsequently, in Peddycoart v. City of Birmingham, 354 So.2d 808 (Ala. 1978), this Court determined that legislative enactments such as Act No. 406, which applied only to certain population brackets, were local laws and unconstitutional under § 105, Ala. Const. 1901, as it existed at that time. The constitution was thereafter amended by Amendment No. 375, which amended § 110, Ala. Const. 1901, and Amendment No. 389, which validated certain population-based acts; those amendments validated pre-Peddycoart local laws, including Act No. 406, which were constitutional but for compliance with § 105. See Freeman v. Purvis, 400 So.2d 389 (Ala. 1981). As of 1981, therefore, Act No. 406 was valid.
[2] Judge Woodall at that time also found a subsequent act dealing with occupational taxes, Act No. 99-406, Ala. Acts 1999, unconstitutional as discussed infra.
[3] The act applied "to any county of the State of Alabama having a population of 500,000 or more, according to the last or any subsequent federal census. . . ." At that time, Jefferson County was the only county that met that criterion.
[4] Section 43 provides:

"In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men."
[5] We take judicial notice of the enactment of Act No. 2009-811 on August 14, 2009, during a specially called session of the legislature, also dealing with an occupational tax for Jefferson County. However, the effect of that act is not before us in this appeal.
[6] It was undisputed that a quorum was present when the votes were cast, that a majority of the votes cast were in favor of the bills in question, and that the legislative rules did not require a vote from every member whose presence had been counted in order to conclude that a quorum was present.
[7] We note that in its principal brief before this Court, the County argued that we should uphold the jurisdiction of the trial court in the JCEA action if the question whether that court had subject-matter jurisdiction was merely arguable. The County cited Fafel v. DiPaola, 399 F.3d 403 (1st Cir.2005), for the standard of review in determining whether a court acted beyond its subject-matter jurisdiction. The Fafel court acknowledged competing considerations of confining a court to its jurisdiction and the need for finality of judgments and concluded:

"If a court has an `arguable basis' for concluding that it has subject-matter jurisdiction, the judgment it enters may not be collaterally attacked as `void.' Nemaizer v. Baker, 793 F.2d 58, 65 (2d Cir.1986)."
399 F.3d at 411. The County then referred to its contention regarding the distinction between BJCCA and the JCEA action stemming from the clash between the executive and legislative branches that is involved when the sufficiency of votes to deviate from matters included within the Governor's call for a special session is at issue. We do not reach the issue of "arguable basis" because that argument was not made in the trial court. "This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court." Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala. 1992).
[8] The trial court implemented a form of prospective application by holding that the taxpayers would be entitled to a refund only of taxes paid after its January 12, 2009, order. The taxpayers dismissed their cross-appeal of this aspect of the trial court's order; therefore, that issue is not before us.
[9] In its reply brief, the County relies on Abbott Laboratories v. Durrett, 746 So.2d 316 (Ala. 1999). This Court's decision in Abbott is nearly identical to its decision in Archer Daniels.
[10] The County also argues that Act No. 99-669 impairs its obligations under its general obligation bonds. In its reply brief, the County contends that it raised this argument in the trial court, pointing to an affidavit attached to a motion to stay execution filed after the trial court's entry of its judgment. The motion does not in any way refer to the County's previous and separate arguments in support of its motion for a summary judgment based on violation of the Contracts Clauses. Moreover, the affidavit merely mentions that the County has outstanding bonds. We reject the County's contention that the foregoing suffices as an argument in the trial court that Act No. 99-669 violates the Contract Clauses in that it impairs the County's obligations under its general obligation bonds. "This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court." Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992).
[11] Based on the Contract Clauses and the County's obligation to the Authority, the County also argues that Act No. 99-669 was void from its inception and that the County's subsequent completion of its obligation and mootness of the issue cannot render the act valid, citing Ex parte Southern Ry., 556 So.2d 1082, 1089 (Ala. 1989). However, once the County completed its payments to the Authority, this argument itself became an "abstract question" that does not involve "existing facts or rights" and is, therefore, moot. Dawkins, 268 Ala. at 18, 104 So.2d at 831. We are not here dealing with a statute unconstitutional on its face. The County's attack with respect to this issue is on the ground that when applied in light of facts of existing contracts, Act No. 99-669 is unconstitutional. As discussed infra, once the fact of an existing contract is no longer present and the basis for unconstitutionality as applied is moot, there is no right to a determination of unconstitutionality as applied unless an exception to mootness is asserted and is applicable. However, the County did not argue that any exceptions to the doctrine applied. See note 12 below and accompanying text. Accordingly, the County's argument on this issue is not well taken.
[12] The Authority argues this issue in its amicus brief, but there is no indication the County ever raised it in the trial court, and it was not raised before this Court.
[1] A decision of the Jefferson Circuit Court, Judge William A. Jackson, in Jefferson County Employees' Association et al. v. Jefferson County, Alabama, et al. (CV-00-0297), holding Act No. 99-669, Ala. Acts 1999, unconstitutional, which, in our August 25, 2009, opinion we held was void for lack of subject-matter jurisdiction.