MALONE, Chief Justice
(dissenting).
I respectfully dissent. This case turns on the construction of Ala.Code 1975, § 26-15-3.2, the “chemical-endangerment” statute. This Court is therefore governed by the fundamental rule of statutory construction regarding criminal statutes, i.e., that such statutes are to be construed narrowly to avoid criminalizing actions the legislature did not specifically intend to *432 criminalize. A few of the many cases espousing this principle are Ex parte Theodorou, 53 So.3d 151 (Ala.2010); and Billingsley v. State, 115 So.3d 192 (Ala.Crim.App.2012). That this rule is fundamental is exemplified by the words of Chief Justice John Marshall in United States v. Wiltberger, 18 U.S. (5 Wheat.) 76, 95, 5 L.Ed. 37 (1820): “The rule that penal laws are to be construed strictly, is, perhaps, not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals; and on the plain principle that the power of punishment is vested in the legislative, not in the judicial department.” Although the majority acknowledges this settled rule, it refuses to apply it, instead favoring a “common-sense” reading of the chemical-endangerment statute that construes the term “child” as used in the statute as broadly as possible, to include unborn children back to the instant of conception.
I have great difficulty accepting this construction in light of the legislature’s action in 2006 to amend Ala.Code 1975, § 13A-6-l(a)(3), a part of Alabama’s homicide statutes, Ala.Code 1975, § 13A-6-1 et seq., to include in the definition of “person” an “unborn child.” The chemical-endangerment statute was enacted that same year, but that statute specifically uses the term “child,” as distinct from the language in the homicide statute. The majority’s rationale for its expansive interpretation of the chemical-endangerment statute in spite of the plain language of that statute is that the legislature’s use of the term “unborn child” in other statutes such as the homicide statute shows a concern for the protection of unborn children in all instances, even when the legislature specifically used the word “child,” and not “unborn child,” in the chemical-endangerment statute. Although I do not doubt the legislature’s concern for the protection of unborn children, I have concerns in questioning the collective wisdom of the legislature as it relates to this specific statute. Secondly, I must question whether this Court is acting within correct conservative judicial principles by implying an intent to supplant the actual language used by the legislature. I believe that the legislature’s use of the term “child” in the chemical-endangerment statute when it was contemporaneously using the term “unborn child” in other criminal statutes was purposed and requires this Court to distinguish between those two terms in the context of the chemical-endangerment statute. That is, the Court must give effect to the legislative intent and wisdom as expressed in the plain language of the statute. Jefferson Cnty. Comm’n v. Edwards, 32 So.3d 572, 586 (Ala.2009).
My disagreement with the majority’s “common-sense” expansion of the chemical-endangerment statute is that that expansion potentially leads to other, more practical, problems. First, a simple application of the present state of the law set out by the majority to a woman who has conceived, but who is without knowledge that she is pregnant, and who thereafter has a glass of wine, makes her subject to a felony prosecution at the “discretion” of the State. Whether the chemicals that are harmful to the unborn child are legal or illegal, their ingestion or use by a woman who has conceived has become a felony even though the act that is criminalized is committed without knowledge or intent. I believe that the chemical-endangerment statute as construed by the majority therefore raises profound concerns for challenges to its constitutionality under the provisions of the Alabama and the United Sates .Constitutions that require due process of and equal protection under the laws. Furthermore, the majority’s opinion raises these concerns with every expectant mother, in a number of complex *433 situations that are significantly impacted by religious faith, racial background, economic status, and the nature of the conception, among many things; those things “all do not matter” based on the majority’s opinion. Finally, and sadly for the majority’s “common-sense” construction, the chemical-endangerment statute will now supply women who have, either intentionally or not, run afoul of the proscriptions of the statute a strong incentive to terminate their pregnancy. I do not believe that the majority’s construction reflects the intent and wisdom of the legislature or the long settled law governing this Court’s construction of criminal statutes; I must therefore respectfully dissent.